THE ILLINOIS GRAND TRUNK RAILROAD COMPANY, Plaintiff in Error, *v.* CALEB COOK, Administrator, etc., Defendant in Error.

ERROR TO BUREAU.

Any defect in the organization of a company under the general railroad law, may be effectually cured by the legislature.

Obligations and subscriptions taken before such confirmation, may enure to the benefit of the company by such instrumentality.

If a railroad company ceases to prosecute work, attempts to misapply its means, or attempts any radical change in the character of the enterprise, it may be enjoined from collecting the obligations given to support the original undertaking.

THE substance of this bill of complaint is sufficiently stated in the opinion. The prayer of the bill was, that the company, and all others who claimed to have any interest in the mortgage, bond, or coupons, should be enjoined from taking any proceedings to enforce their collection, and that the mortgage should be canceled. Upon the overruling the demurrer to the bill, there was a decree in accordance with the prayer.

The plaintiffs below brought the cause to this court by writ of error.

GLOVER, COOK & CAMPBELL, for Plaintiff in Error.

The bill charges, that the act of consolidation of the said companies made a fundamental change in the company, and the consolidated company thereupon embarked upon an enterprise differing entirely from that to which said Cook subscribed, and thereby he was wholly released from all liability to pay said stock subscription secured by said bond and mortgage. *Rice* v. *Rock Island and Alton R. R. Co.*, 21 Ill. 93; Act of Legislature, Scates' Stat. 951; *Sprague* v. *Illinois River R. R. Co.*, 19 Ill. 174; *Terre Haute and Alton R. R. Co.* v. *Eard*, 21 Ill. 291; *Peoria and Oquawka R. R. Co.* v. *Ettery*, 19 Ill. 429; *Barret* v. *Alton and Sangamon R. R. Co.*, 13 Ill. 177.

The point made is only a question of the regularity of the organization of the company. This question cannot be raised except in a direct proceeding to oust the company of its franchises. *Coles County* v. *Allison*, 23 Ill. 437; *Rice* v. *Rock Island and Alton R. R. Co.*, 21 Ill. 95; *President and Trustees* v. *Thompson*, 20 Ill. 200; *Hamilton* v. *Carthage*, 24 Ill. 22; *Tarbell* v. *Page*, 24 Ill. 46; *People* v. *Watkins*, 19 Ill. 118; *Williams* v. *Bank of Illinois*, 1 Gilm. 690; *Klein* v. *Sangamon R. R. Co.*, 13 Ill. 514.

M. T. PETERS, for Defendant in Error.

Cited, 2 American Railway Cases, 484; 9 Cushing, 423; Redfield on Railways, p. 77, sec. 1; 2 Story's Eq., secs. 705, 906, 955.

WALKER, J. The bill in this case alleges, that complainant is administrator of Philander Cook, who on the 16th day of February, 1857, executed and delivered to the Camanche, Albany and Mendota Railroad Company, his note for one thousand dollars, due in ten years from date, with ten interest notes attached, for fifty dollars each, one of which is payable annually, and a mortgage on certain real estate in Iowa was given, to secure the payment of the same. That the railroad company, was organized under the general railway act of 1849, and that under the act of June, 1854, it became consolidated with the Joliet and Terre Haute Railroad Company, in the month of June, 1859, and the company thus formed assumed the name of the Grand Trunk Railway. That this company, about the 21st of January, 1861, filed the bond and coupons in the County Court of Bureau county, as a claim against the estate of the maker. That by the articles of association of the Camanche, Albany and Mendota Railroad Company, it was proposed to construct their railway through Bureau county, and that the maker of the bond and coupons owned real estate in the county, which he believed would be thereby enhanced in value, and afford him enhanced facilities for marketing his produce. That the mortgage and bond were given upon the consideration that the road would be

constructed without delay, through the county of Bureau, but that the road had not been constructed, but labor on it had been suspended for a year past, and that complainant believes that the company has altogether abandoned its construction, and all benefits expected to be derived by the completion of the road by intestate will be lost.

The bill alleges, that the officers of the company are endeavoring to collect the amount of the bond and mortgage out of the estate of the maker, for the purpose of applying the money, when collected, to some object foreign to that for which it was subscribed. That the company threaten to transfer and dispose of the bond and mortgage, for the purpose of avoiding the equitable defense to the same, and will, unless enjoined, transfer and assign them.

The bill further alleges, that the company never did obtain the requisite amount of *bona fide* subscriptions, to enable it to build the road as required by the law under which the company was organized. That subscriptions to a large amount were obtained, from persons having no ability to pay, and who never intended to pay the same; that such subscriptions were obtained with the fraudulent intent, by the officers of the company, to deceive and injure *bona fide* holders of stock, and to make it appear, that the requisite amount of subscriptions had been obtained, so as to elect directors, and then make calls, and to collect subscriptions. It is insisted by the bill, that by the law, a sum sufficient to build the contemplated road, must be subscribed in good faith, before directors can be elected, or authorized to demand payment on subscriptions, and that the company had no authority to commence the construction of the road, until a sufficient sum should be subscribed for its completion.

The bill also insists, that as the bond and mortgage are payable to the company, assignees of these securities are bound to take notice of the power of the company as given by law; and the bond and mortgage being void, in the hands of the company, they are equally so in the hands of subsequent holders.

The bill charges, that the act of consolidation made a

fundamental change of the company, and the consolidated company entered upon an enterprise, differing entirely from that to which this subscription was made, and that Cook was thereby wholly released from its payment. That in settling the estate of Cook, it will become necessary to sell the land embraced in the mortgage. That it forms a cloud upon the title, which will depreciate its value. The bill prays a temporary and a perpetual injunction against the sale or collection of the bond and mortgage. To the bill a demurrer was filed, which on the hearing was overruled, and relief decreed according to the prayer of the bill.

It is urged, that by the amendatory act, of 1857, in relation to the Camanche, Albany and Mendota Railroad Company, all irregularities in its organization were cured and legalized. By the preamble to the act, it is declared, that this road became a body corporate and politic, on the 11th day of September, 1856, by filing articles of association with the Secretary of State, in accordance with the provisions of the general railway law. The act authorizes the company to commence and construct their road, from the town of Mendota to the town of Albany. By it they are also authorized to give and take bonds bearing any rate of interest, not exceeding ten per cent.; and to exercise all the powers, and be entitled to all the immunities, which are conferred by the general railway law of 1849. It also sanctions and legalizes all acts done, and contracts entered into prior to the passage of this act.

It is urged, that the means adopted for the organization of this company, although apparently in conformity with the law, were in fact in fraud of its provisions. That whilst their books showed a sufficient sum to authorize an organization, yet that a large portion of the subscriptions were fraudulently obtained, of persons unable, and who never intended to pay. We deem it unnecessary to inquire whether this would have formed an objection to the enforcement of this subscription, inasmuch as the General Assembly has in terms legalized all of the acts of the company, prior to the passage of the law of January, 1857. If it could have been held such an irregu-

larity as could have been urged in this proceeding, the legislature was vested with ample power to cure the defects, and has done so, in unmistakable terms.

The same may be said of the supposed objection, that it was essential that the general railway act required the company to obtain subscriptions in sums sufficient for the completion of the entire road, before they commenced its construction. The first section of the act of 1857, in terms authorized the company to commence and construct their road from the town of Mendota to the town of Albany. This is conclusive of that objection.

Nor can the objection avail, that the company had not obtained the requisite amount of subscriptions to authorize an organization under the provisions of the general railway law of the State. This was cured by the act of 1857, which by the third section, sanctions and legalizes all acts done by the company. This ends all controversy on that question. These questions are all interposed to the legality of the corporate existence of this company. All chartered rights and privileges, properly exercised, must be obtained from the legislature, and they are vested with the discretion to either grant or withhold them, and they may exercise that power on such terms as they may choose. It was perfectly competent for that body to impose conditions as to the amount of stock to be sold before the company could become vested with corporate powers, to authorize them to exercise such privileges without any subscriptions. And if any usurpation of franchises and privileges has occurred in this case, they had the authority to, and have legalized them by a subsequent grant.

The General Assembly, by sanctioning and legalizing all the acts of this company, recognized the validity of this bond and mortgage. They validated them to the full extent of their power. But if they were void when given, no act of the General Assembly could make them binding. That could be done alone by the party himself. If the legislature could, by enactment, give validity to a void instrument, they could create contracts for individuals without their consent. Such legislative power has never been recognized, and cannot

be exercised. Then this enactment gave no force to these instruments, which they did not previously possess.

The question is thus presented, whether these instruments were binding, independent of this enactment. The company to whom they were given had a *de facto* existence, and a person who contracts with such a body, will not be heard to insist that its organization was illegal, to avoid liability on his agreement. *Rice* v. *The Rock Island R. R. Co.*, 21 Ill. 93. But has such an organization power to take, for subscriptions to their capital stock, bonds secured by mortgage?

It has never been questioned, that they may take such instruments in the transaction of their business, and to secure indebtedness incurred in exercising their franchises. To render their chartered rights of any practical use, such a power is necessarily implied. Whilst this is true, they could not trade in such instruments as a matter of speculation, or as a business, separate from the necessary exercise of their chartered privileges. Nor has it been doubted that such bodies may receive labor or property in payment for their capital stock. And when so received, if it is at a cash value, no injury can result to the community or to stockholders, and these commodities are made to answer the purpose of money subscriptions.

A valid reason is not perceived why such a body may not receive for the same purpose a bond well secured, and capable of being converted into money without loss to the incorporation. If the person making the subscription were to execute and dispose of his bond, for the purpose of raising the money to pay for his stock, it would be free from all objection. Then why may he not do the same thing through an agent, and constitute the company his agent for the purpose? The action of the company in converting the security into money, would be in furtherance of the objects of its creation, and would not be as a speculation, but to secure the construction of their road. We are therefore of the opinion that the taking of this bond for the purpose for which it was given, was not illegal, but that these instruments were valid and binding.

It is also alleged, that labor on the road has been suspended,

and the officers of the company were striving to collect this money to be applied to some other purpose foreign to that for which it was subscribed. This is admitted by the demurrer to be true, and its truth forms ample grounds for restraining the company or its officers from misapplying these funds, although not grounds to inhibit its collection.

It is also alleged, that complainant believes that the construction of the road has been abandoned. This charge is not specific and positive. The demurrer only admits that such is complainant's belief. And before it could form a ground of relief, it should appear that the project was abandoned, and that the money was not required for the purpose of discharging indebtedness.

The legal power to consolidate these roads is not questioned, but it is alleged by the bill that it wholly changed the character of the enterprise. The truth of this allegation is admitted by the demurrer. The defendants below saw proper to admit this allegation to be true, and not to traverse the fact, and we must act upon it precisely as if it had been established by evidence. They also abided by their demurrer, and failed to obtain leave to answer. It is believed, that no court has ever held that a change of such an enterprise, so as to render it radical, and to constitute it a different corporation, for the attainment of other purposes than that to which the subscription was made, did not release the subscriber from its payment. Here it stands admitted that such was the character of the change, and by it the maker of these instruments was released from their payment. It is admitted that this money is sought to be collected to be applied to the consolidation of a road wholly different in its objects from that to which the subscription was made. This the company, or the legislature even, have no power to accomplish.

The decree of the court below must therefore be affirmed.

*Decree affirmed.*