# CASES

# APPELLATE COURTS OF ILLINOIS.

Fourth District—February Term, 1878.

## Edward Rutz

v.

## The Esler and Ropiequet Mf'g Co.

1. Incorporation—Estoppel.—A subscriber to the capital stock of an incorporated company, when he participates in its organization and acts as a director, is estopped from showing that the company failed to comply with the law in its organization.

2. Subscription to stock—Fraudulent representations.—Where a corporation sends out agents to procure subscriptions to its stock, and such subscriptions are obtained by fraudulent representations, the fraud may be set up in bar of a recovery on a suit for such subscriptions; but where subscriptions are procured by commissioners prior to the organization of the company, their fraudulent representations made to induce subscriptions, constitute no defense to a suit by the company for such subscriptions. They are not the agents of the company.

3. Release of subscription to certain stockholders.—A release of all or a portion of the amount subscribed by some of the subscribers, releases all the subscribers who do not assent to that release, or in some way give their sanction to it. Such release destroys the equality that exists between subscribers according to their subscriptions, which is the very essence of the contract.

Appeal from the Circuit Court of St. Clair county; the Hon. Wm. H. Snyder, Judge, presiding.

(83)

Mr. R. A. HALBERT, Mr. F. A. McCONAUGHY and Messrs.
WILDERMAN & HAMILL, for appellant; that it was error to give
verdict and judgment for an amount greater than that claimed
in the declaration, cited Stephens v. Sweeney, 2 Gilm. 375;
Brown v. Smith, 24 Ill. 198; Walcott v. Holcomb, 24 Ill. 331;
Riues v. Kumler, 27 Ill. 291; Altes v. Hinckler, 36 Ill. 266.
. . The capital stock not having been fully subscribed, no legal
organization could be effected, and the call was made by per-
sons unauthorized to make it: Rev. Stat. 1874, 286; G. G. N.
Q. M. C. v. McLister, 15 Eng. Rep. (Moak) 1; Bigelow v.
Gregory et al. 73 Ill. 197.

Appellant's subscription was induced by fraud, and this can
be set up as a defense; Bwlch-Plwm Lead Co. v. Baynes, 2 Law
Rep. 324; McCreight v. Stevens, 1 H. & C. 454; Glamorgan-
shire Co. v. Irvine, 4 F. & F. 947; Henderson v. Railway Co.
17 Tex. 560; Peek v. Gurney, 1 Eng. Rep. (Moak) 567; Upton
v. Triblecock, 1 Otto, 53; Miller v. Barber, 66 N. Y. 558; Bur-
rows v. Smith, 6 Seld. 550; Neil v. Cummings, 75 Ill. 170;
Blalock v. Randall, 76 Ill. 224; Thomas v. Coultas et ux. 76
Ill. 493; Angell & Ames on Corporations, § 531; 1 Redfield on
Railways, 159; Brice on Ultra Vires, 152; Allen v. Hart, 72 Ill.
104; Case v. Ayers, 65 Ill. 142; Will'ams v. Franklin, etc.,
Asso. 26 Ind. 315; Brookville Lumber Co. v. McCarty, 8 Ind.
392; Hubbard v. Chappel, 14 Ind. 601; Evert v. C. & A. Lum-
ber Co. 19 Ind. 242.

A release of certain of the subscribers from a portion of their
subscription, releases all: County of Crawford v. Pittsburg R.
R. Co. 32 Pa. St. 141; New York Ex. Co. v. DeWolf, 31 N. Y.
282; Angell & Ames on Corporations, § 531; McConaty v.
Cent. Lum. Co. 1 Penn. 426.

Mr. C. W. THOMAS, for appellee; that the remittitur by appel-
lee cured the objection that verdict and judgment were greater
than claimed in the declaration, cited Rev. Stat., chap. 110,
§ 82.

The appellant is estopped to deny the legal organization of
the corporation: Herman on Estoppel, § 569; Wight v. Shelby
R. R. Co. 16 B. Mon. 7; Central Plank Road Co. v. Clemens,

16 Mo. 359; Stone v. Great Western Oil Co. 41 Ill. 85; Kansas City Hotel Co. v. Harris, 51 Mo. 464; Lane v. Brainerd, 30 Conn. 577; Crump v. U. S. Mining Co. 7 Gratt. 352; Southern P. R. R. Co. v. Hixon, 5 Ind. 166; Northern Mo. R. R. Co. v. Winkler, 33 Mo. 354; Smith v. Heidecker, 39 Mo. 157.

The fact that the directors who make the call are not legally elected is no defense to this action: Eakright v. Logansport R. R. Co. 13 Ind. 404; O. & M. R. R. Co. v. McPherson, 35 Mo. 13; Johnson v. Crawfordsville, etc. R. R. Co. 11 Ind. 280.

A corporation has power to enforce a contract for subscription, though it might not maintain its corporate existence if attacked in a direct proceeding: Buffalo & Albany R. R. Co. v. Cary, 26 N. Y. 75; Swartout v. M. C. R. R. Co. 24 Mich. 389.

No representations made by the commissioners as to what the proposed company would do, would be binding upon the company after it was organized: Cabey v. R. R. Co. Sup. Ct. Penn. 1876; Wharton on Contracts, § 1068.

ALLEN, J.    To the April term of the St. Clair Circuit Court suit was brought by appellee against appellant for the recovery of $2,250, on a call of subscription to capital stock to appellee by appellant.

The declaration alleges that appellee is a body corporate. That appellant, on the 6th day of February, 1875, became a subscriber for thirty shares of the capital stock of appellee; that the shares were $100 each, to be paid in such installments as the directors of appellee might call for; and that on the 1st of September, 1875, appellee, by its directors, pursuant to its by-laws and the statute laws of the State, made a call upon appellant to pay $75 on each of his thirty shares, by which call appellant became liable to pay $2,250; damages claimed, $2,500.

It was stipulated between the parties that all legal defenses to the action might be proved on the trial under the general issue that might be proved under a special plea.    A jury trial was had and verdict returned for appellee, fixing his damages at $2,587.50.    Appellant moved for a new trial.    Motion over-

ruled and judgment by court for $2,587.50 and cost of suit. Appeal prayed and allowed to this Court.

Several errors are assigned, among which are:

1. Refusal of the court to give third instruction asked for by appellant.

2. In refusing to grant a new trial.

3. In rendering judgment for amount of damages found by jury.

The first point made by appellant is the refusal of the court to give the following instruction:

"If the jury find, from the evidence, that at the time the commissioners to open books for subscription to the capital stock of the proposed Esler and Ropiequet Manufacturing Company gave notice of a meeting of the subscribers for the purpose of electing directors or managers of said proposed corporation, the said capital stock had not been fully subscribed, and said commissioners knew that it had not been so subscribed, and that said capital stock was not fully subscribed at the time appointed for said meeting, and that at said meeting, one of said commissioners then subscribed eleven shares, of one hundred dollars each, to complete the full amount of the authorized subscription; and that the directors who made the call sued on in this case, were elected at said meeting; and that said commissioners, in their report to the Secretary of State of their proceedings, made it appear that said notice was given after said stock was fully subscribed, and thereby procured said Secretary of State to issue a license or certificate of the complete organization of said corporation, then the directors so elected would not be authorized to make calls for the payment of subscriptions to such capital stock; then such subscribers should afterward knowingly carry on business in the name of such proposed corporation would be liable as partners to all persons to whom such proposed corporation might become indebted in business; and if such subscription of eleven shares was made as aforesaid, without the knowledge or consent of the defendant in this case, then it was fraudulent as to him, and he cannot be compelled to pay calls upon his subscription to such stock, unless the jury further believe, from the evidence, that the defendant, after a

full knowledge of all the facts, has ratified the aforesaid acts."

It is shown, by the evidence, that when the stockholders' meeting was called, and up to the time of that meeting, the amount of necessary capital stock had not been subscribed; that just before the meeting organized, Ropiequet, one of the commissioners, made a subscription of $1,100 in the name of Jacob J. Esler, which made the amount required.   The evidence tends to show that appellant had no knowledge of the deficit in the amount, or that it had thus been made complete.

It is insisted by appellant that inasmuch as the full amount of subscription to capital stock had not been made before the stockholders' meeting was called, that under the law authorizing the corporation to be formed, Rev. Stat. Ch. 32, 286, no organization could then be had, and that a directory elected under an organization had at that meeting could not legally make a call on subscribers to the capital stock.

But the evidence shows that appellant was present and took part in the organization of the company at that meeting; that he was appointed a director and accepted the appointment, and acted as such for a time at least, and our opinion is that he is estopped from setting up such an irregularity in its organization.

The case referred to by appellant, Bigelow v. Gregory et al. 73 Ill. 197, is, we think, not in point.   In that case the question was as to the liability of the members of the association as partners for a debt contracted by them before they had become organized under the laws of the State, and the court held that inasmuch as they had not complied with the law so as to become a corporation at the time they incurred the debt for which they were sued, they were liable as individuals for that debt, and that they could not shield themselves from their personal liability by showing that they had afterward become incorporated.   See Angell & Ames·on Corporations, 636; Kansas City Hotel v. Harris, 51 Wis. 464; Danbury & Norwalk R. R. Co. v. Wilson, 22 Conn. 435; Law v. Brainard, 30 Conn. 577; Smith v. Hardecker, 39 Mo.

And in Stone v. G. W. Oil Co., 41 Ill. 85, the court holds that the subscriber is estopped when he participates in the

organization and acts as director. We therefore hold that the court.properly refused that instruction.

Another point urged by appellant is that he was induced to make the subscription through the false and fraudulent representations of Ropiequet and Esler, who were appointed commissioners to solicit subscriptions to the capital stock prior to its organization. While there has been much controversy in the courts of this country over this question of fraudulent misrepresentations by commissioners in the procurement of stock subscriptions, we think the doctrine is pretty well settled that this defense is not available. In Smith v. Hardecker, 39 Mo. 157, a case in its leading features almost identical with this case, and in Gully v. R. R. Co., a recent decision of the Supreme Court of Pennsylvania, and referred to with approval by Wharton on Contracts in note to Sec. 1068, the courts say: " These commissioners are not agents of the corporation, for it is not yet in being;" and a subscriber to the capital stock cannot set up fraudulent representations by such commissioners as a release of his obligation to pay his subscription. A different rule rightly obtains where a corporation sends out its agents to procure subscriptions, and subscriptions are obtained by fraudulent representations. In such case it is held that the fraud may be set up in bar of a recovery; but this is upon the ground that the corporation is responsible for the act of its agents, and most of the American authorities referred to by appellant in support of his theory are upon subscriptions obtained by the agents of the corporations after they are organized.

Another question is raised by appellant, which, if his view is correct, must prevent a recovery.

The records of appellee, introduced in evidence, show that at a meeting of the board of directors held on the 10th of March, 1877 (after appellant had resigned his directorship and demanded a cancellation of his subscription), a resolution was passed authorizing an arrangement with certain subscribers to the capital stock, by which, upon giving their individual notes for one-half of their subscriptions they were to be released from the payment of the other half, and that this arrangement was

made with quite a number of the original stock subscribers, and their notes taken and accepted for a moiety of their subscriptions in full satisfaction.

Did this act of the board release appellant from his obligation to pay his subscription?

The courts of this country, with but few exceptions, have held that a release of a portion of the subscribers to the capital stock releases all the subscribers who do not assent to that release, or in some way give their sanction to it.  Pittsburgh & Connellsville R. R. Co. v. Graham, 8 Casey; P. & C. R. R. Co. v. McCally, Ib.; P. & C. R. R. Co. v. Graham, 2 Grant, 259; Stewart v. Trustees Hamilton College, 2 Denio, 403: Crawford County v. Pittsburgh & Erie R. R., 32 Penn. 141, and N. Y. Exchange Co. v. De Wolf, 31 N. Y. 273, all hold this doctrine.

In some of these cases the release had been effected before the *bona fide* subscriptions were obtained, in others after it had been obtained, as in this case.  It destroyed that equality that exists between subscribers, according to the terms of their subscriptions, which is the very essence of the contract; and in Angell & Ames on Corporations, in discussing what will and what will not release a subscriber to capital stock from his liability, the author says: " If a stock company lets off a part of its subscribers and returns their money, the other subscribers, not assenting thereto, are discharged from liability growing out of their original subscriptions."  Angell & Ames on Corporations, § 531.

Unless there was some proof that appellee had assented to this release of subscribers, or some fact appearing from which his assent could be implied, upon the authorities above cited he is released from his liability on his original subscription.  And, as under the agreement that every defense that could be legally made might be made under the general issue, we hold that upon that issue the verdict should have been for appellant, and that it was error to refuse the motion for new trial, and to render judgment on the verdict of the jury against appellant.

The *ad damnum* in the declaration is $2,500.  The jury

returned a verdict, and the court entered judgment for $2,587.50. This was also an error, but appellee filed a *remittitur* in this court for $87.50, which cured that error so far as the *ad damnum* laid in declaration is concerned, but we are unable to say whether the assessments and interest amount to that sum or not, as the record wholly fails to show when the call for $75 on the shares was made. The only evidence that a call was ever made that we find in the record is the statement of the secretary of the board, in his oral testimony, that he had notified appellant of the call and requested payment. But since this case must be reversed on the other ground above stated, we regard this question as not requiring further notice.

This cause is reversed and remanded.

Reversed and remanded.