CHRISTOPHER B. BOUTON

*v.*

A. B. DEMENT *et al.*

*Filed at Ottawa November 11, 1887.*

1. CORPORATION—*capital stock as a trust fund—power to release stockholder's liability to the prejudice of creditors.* The capital stock of a moneyed corporation is a trust fund for the benefit of its shareholders and creditors, and the directors, who hold the same as trustees, have no power to release the obligation of a subscriber to pay his subscription. The capital paid in and agreed to be paid is a fund, which the trustees can not squander or give away.

2. So the release of a stockholder's liability for stock taken, and the surrender of his note given for the same, for the worthless obligation of an irresponsible person, is such a dealing with the assets of the corporation by its officers as will not be tolerated, to the prejudice of creditors of the corporation.

3. In this case a stockholder in an insurance company, being indebted by note of $10,000, secured by deed of trust, for shares of stock of the company, conveyed the land in the trust deed to an irresponsible person, taking his note for $10,255, secured by his deed of trust on the same land, payable to the insurance company, and procured the officers of the company to surrender his note and take the note of his grantee in lieu thereof. The company hypothecated this last note with a bank, which sold the same to the stockholder's brother-in-law for $1500, which was its full value, and he, in turn, sold the same to the stockholder for the same price; the stockholder was also a director and a member of the finance committee of the insurance company: *Held,* that while the surrender and cancellation of his note of $10,000 for another, from which only $1500 was realized, was binding on the corporation, it was fraudulent and void as to its creditors.

4. CREDITOR'S BILL—*limiting decree to complainant's demand.* On creditor's bill by a part, only, of the creditors, filed for themselves alone, and not on behalf of creditors generally, to set aside a fraudulent conveyance and enforce payment of a shareholder's liability to the debtor corporation, it is error to decree the payment of any larger sum than will satisfy the claims of the creditors joining in the bill.

5. ASSIGNMENT FOR BENEFIT OF CREDITORS—*powers and rights of an assignee in respect to fraudulent conveyances.* A fraudulent transfer of property by a debtor being binding as between the parties, can not be impeached or set aside by the assignee of the debtor under an assignment for

the benefit of creditors. A general assignment for the benefit of creditors does not pass to the assignee any interest in property before fraudulently transferred by the assignor, nor any right to avoid such fraudulent transfer. Such right belongs to the creditors alone.

APPEAL from the Appellate Court for the First District;— heard in that court on appeal from the Circuit Court of Cook county; the Hon. T. A. MORAN, Judge, presiding.

Messrs. LEAMING & THOMPSON, for the appellant:

Complainant in the cross-bill is a voluntary assignee, under a deed of assignment by the Empire Fire Insurance Company, and as such possesses no other or greater powers than those possessed by this assignee at the time of the assignment. His whole power is derived from the deed of assignment. Bishop on Insolvency and Assignments, 270, sec. 292; Starr & Curtis' Stat. chap. 72, sec. 47; *Estabrook* v. *Messersmith,* 18 Wis. 551; *Hawk* v. *Pretzlaff,* 51 id. 160; *Brownell* v. *Curtis,* 10 Paige, 210; *Leach* v. *Kelsey,* 7 Barb. 466; *Knowles* v. *Lord,* 4 Whart. 500.

The original bill having been filed on behalf of complaining creditors alone, and not on behalf of creditors generally, they could, in no event, be entitled to a decree for a larger amount than sufficient to liquidate their judgment and costs.

The rights of an organized company over its unsubscribed stock, in the absence of restraining legislation, is the same, so far as its right to dispose of it is concerned, as the rights of an individual owner over private property. It may be exchanged for labor or property. *Railroad Co.* v. *Hatch,* 1 Dis. O. 84.

The decree is excessive in amount, and can not be sustained by the evidence in the case. There is no evidence to justify the amount of the decree.

At the time of the assignment to appellee Cole, the assignor had no right of action against appellant, either present or prospective; hence appellee Cole has no right of action.

Mr. R. A. CHILDS, for the appellees:

No payment has been made for the stock taken by appellant, and he is liable therefor to the creditors of the insolvent corporation. *Upton* v. *Tribilcock*, 91 U. S. 45; *Sawyer* v. *Hoag*, 17 Wall. 610; *New Albany* v. *Burk*, 11 id. 106; *Insurance Co.* v. *Manufacturing Co.* 97 Ill. 537; *Melvin* v. *Insurance Co.* 80 id. 446; *Brigham* v. *Mead*, 10 Allen, 245; *Seymour* v. *Sturgis*, 26 N. Y. 134; Morawetz on Private Corp. 588, 589.

At common law the assignee of an insolvent debtor can sue where the debtor might have sued prior to the assignment. Here, the corporation might have sued. *Dewing* v. *Perdicaries*, 6 Otto, 193; *Austin* v. *Daniels*, 4 Denio, 301; *Neall* v. *Hill*, 16 Cal. 145; *Hodges* v. *Screw Co.* 1 R. I. 312; *Charitable Corporations* v. *Sutton*, 2 Atk. 401; *Hersey* v. *Veazie*, 24 Me. 12; *Smith* v. *Poor*, 40 id. 415; *Robinson* v. *Smith*, 3 Paige, 222; *Moyley* v. *Austin*, 1 Phillips, 790; *Brown* v. *Vandyke*, 4 Holst. 795.

The capital stock of a corporation can not be relieved from its liability to creditors by any artifice, device, mistake or change in its character, whether the transaction be *bona fides* or *mala fides*. *Upton* v. *Tribilcock*, 91 U. S. 45; *Sawyer* v. *Hoag*, 17 Wall. 610; *Bradley* v. *Farwell*, 1 Holmes C. C. 433; *Coal and Iron Co.* v. *Parish*, 42 Md. 600; *Trustees* v. *Bosseiux*, 3 Fed. Rep. 817; *Hun* v. *Carey*, 59 How. Pr. 439; *Manufacturing Co.* v. *Emrie*, 54 Ill. 345; *Wood* v. *Dummer*, 3 Mason, (U. S.) 308; *Charitable Corporations* v. *Sutton*, 2 Atk. 401; *Railroad Co.* v. *Bridges*, 7 B. Mon. 556; *Sagor* v. *Dubois*, 3 Sand. Ch. 544; *Adler* v. *Brick Co.* 13 Wis. 60; Thompson on Liability of Stockholders, secs. 11, 13, 357.

The Empire Insurance Company never gave Page anything of value for his note, and therefore it could not recover upon the same, excepting in an equitable proceeding thereon as the note of Bouton. It came back into Bouton's hands charged with all the equities against it. *Kost* v. *Bender*, 25 Mich. 515; *Copp* v. *Sawyer*, 6 N. H. 386; Daniell on Neg. Inst. sec. 805.

Mr. CHIEF JUSTICE SHELDON delivered the opinion of the Court:

This is an appeal from a judgment of the Appellate Court for the First District, affirming a decree of the circuit court of Cook county, against Christopher B. Bouton, rendered on June 30, 1886, for the sum of $17,584.92, in the case of a creditor's bill, brought by A. B. Dement and others, against said Bouton and others, the appeal being by Bouton. The decree was for an indebtedness found to be due from Bouton to the Empire Fire Insurance Company of Wheaton, for shares of the capital stock of said company taken by Bouton.

On October 26, 1878, said Dement and others recovered a judgment against said insurance company, for $3500, as damages, and $17 costs, for a loss upon a policy of insurance issued by the company in January, 1877. On October 1, 1878, the insurance company made an assignment of all its property and effects to William D. Cole, for the benefit of its creditors. An execution upon the aforesaid judgment having been issued, and returned no property found, the plaintiffs therein, Dement and others, on March 2, 1880, brought this creditor's bill upon the judgment, making the company, Bouton, Cole, and others, parties defendant, and praying for discovery and relief. The defendants filed their respective answers, Cole, in his answer, admitting the material allegations of the bill.° He also filed a cross-bill, as assignee, making all the other parties to the original bill defendants, alleging Bouton's liability to the company, and breaches of trust on his part and that of other directors and officers of the company, praying for the proper relief, and that the several parties charged with liability to the company be required to pay the several amounts found against them, to him, to be distributed among the creditors of the company.

Bouton's account, by his answer and testimony, of his alleged liability to the company, is as follows: That about

10—123 ILL.

January 15, 1875, he was the holder of one hundred and fifty shares of the capital stock of the Union Insurance Company, of the par value of $15,000, which he, at that time, exchanged for two hundred and eighty shares, of the par value of $14,000, full paid Empire Fire Insurance Company stock, with said Empire company; that he did not give his note to the said Empire company for any sum whatever, did not owe said company anything, and did not agree to pay said Empire company anything whatever for said two hundred and eighty shares of its stock, other than the said one hundred and fifty shares of said Union Insurance Company's stock, which was then delivered in payment of said two hundred and eighty shares of the Empire Insurance Company's stock; that the Empire Insurance Company of Chicago had purchased a note for $10,000, made by him to his own order, and by him indorsed to the Union Insurance Company, which note afterward came into the possession and ownership of the Empire Fire Insurance Company of Wheaton; that this note was secured by real estate in Cook county, conveyed by a trust deed to a trustee; that in April, 1877, anticipating bankruptcy, he applied to the Empire Fire Insurance Company of Wheaton for a description of the note, whose officers then requested him to make an effort to get some third party to purchase the land securing the note, and to give a new note with the same security in lieu of his (Bouton's) note; that this was done with one J. F. Page, to whom the real estate was conveyed; that Page's note for $11,200, and trust deed securing it, of the same real estate, were substituted for Bouton's note and deed of trust, and the latter were cancelled, and surrendered to Bouton; that the Page note was afterward hypothecated to the First National Bank of Chicago, and by it sold to one Cushing, and by Cushing to Bouton, who still holds it. The Union Insurance Company became merged in the Empire Fire Insurance Company.

The finding of the circuit court was, that the change from the Union Insurance Company to the Empire Fire Insurance

Company left Bouton a stockholder in the latter company, and left him indebted upon the stock he held there, in the amount of the face of the Page note; that that note stood in place of his liability for that stock, and formed the measure of his said liability. The decree was for the amount of the note after deducting all payments of money made on account of it by Bouton.

After a full examination of the testimony, we are not prepared to say that this finding of fact by the circuit court was not justified from the evidence. The evidence shows, that from about the time Bouton became a stockholder in the Empire Fire Insurance Company until it made its assignment, he was a director and a member of the finance committee of the company; that when the Union Insurance Company was merged into the Empire Fire Insurance Company, a certain portion of the stockholders of the former made new subscriptions to the capital stock of the latter company, and their notes held by the Union company were surrendered and given up by the latter company. The books of the Empire Fire Insurance Company, as we read them, show that Bouton took $14,000 of that company's capital stock, and paid therefor by his note for $10,235.55, which we take to be the same note (or one of the same amount) that had been given by him to the Union Insurance Company. There were suspicious circumstances attending the after-dealing with the note, tending to show it to have been a device to get rid of Bouton's personal responsibility upon the note. Page, who substituted his note for this note of Bouton, as above stated, was an employe in the Union Foundry Company, of which Bouton was president, and Page was pecuniarily irresponsible. Cushing, who purchased this Page note and trust deed from the bank for $1500, was also an employe of said Union Foundry Company, and the brother-in-law of Bouton. Bouton was with him at the bank, at the time of the purchase. The president of the bank says that on investigation of the property described in the trust deed secur-

ing the note, the bank came to the conclusion that $1500 was all that they could realize from the security and note. Afterward, Bouton purchased from Cushing this Page note and deed of trust for the same price Cushing paid for them. Thus, by the dealing, if held valid, which has been had in regard to this note of Bouton for $10,235.55, held by the Empire Fire Insurance Company, and given, as is found, for stock of the company, Bouton is freed from his personal responsibility upon the note, and all that the company and its creditors realize from the note is $1500. Such dealing, to the prejudice of creditors, with the stock and assets of a corporation, between a stockholder and officer, and the corporation, is not to be tolerated.

It is contended, that taking the facts to be as found by the circuit court, yet the decree is erroneous. As the transaction of the substitution of the note of Page in the place of that of Bouton, and the cancellation and surrender up of Bouton's note, was approved of and ratified by the directors and the stockholders of the Empire Insurance Company of Wheaton, and the company afterwards used the Page note, and hypothecated it with a bank to raise money, it is insisted that the transaction was a valid one, and binding upon the company. This might be so as to the company, and yet be otherwise as against creditors. As bearing upon what were the rights of creditors under the facts as found in this case, we refer to what was said in *Upton* v. *Tribilcock*, 91 U. S. 45, to-wit: "The capital stock of a moneyed corporation is a fund for the payment of its debts. It is a trust fund, of which the directors are the trustees. It is a trust to be managed for the benefit of its shareholders during its life, and for the benefit of its creditors, in the event of its dissolution." And further: "Equally unsound is the opinion that the obligation of a subscriber to pay his subscription may be released or surrendered to him by the trustees of the company. This has been often attempted, but never successfully. The capital paid in, and

promised to be paid in, is a fund, which the trustees can not squander or give away. They are bound to call in what is unpaid, and carefully to husband it when received." We are of opinion that the transaction above referred to was valid as against the insurance company, but not so as against creditors.

The original bill having been filed on behalf of the complaining creditors alone, and not on behalf of creditors generally, it is insisted that the complainants in the original bill could, in no event, be entitled to a decree for a larger amount than sufficient to liquidate their judgment and costs, and that the assignee of the Empire Fire Insurance Company was not entitled to a decree against Bouton for any amount. In this, we agree with appellants' counsel. The exchange of Bouton's note for that of Page, and the cancellation and delivery up of Bouton's note, being valid and binding as to the insurance company, as we find, the company itself could not impeach the transaction and set it aside, and no more, we think, could the assignee of the insurance company do so. The company, by its assignment, conveyed no greater right, in respect of its property, than the company itself possessed.

It is a rule of extensive prevalence, that a general assignment for the benefit of creditors does not pass to the assignee any interest in property before fraudulently transferred by the assignor, nor any right to impeach or set aside such fraudulent transfer,—such right belonging to the creditors alone. *Brownell* v. *Curtis,* 10 Paige, 210 ; *Leach* v. *Kelsey,* 7 Barb. 466 ; *Vandyke* v. *Christ,* 7 W. & S. 373 ; *Estabrook* v. *Messersmith,* 18 Wis. 545 ; *Jones* v. *Yates,* 9 B. & C. 532, (17 E. C. L. 436) ; *Minders* v. *Culver's Assignee,* 1 Duv. 164 ; *Flower* v. *Cornish,* 25 Minn. 473. And see *Carr* v. *Gale,* 3 W. & M. 68. As held by this court, an administrator can not, even for the benefit of creditors, avoid a fraudulent conveyance made by his intestate.

Although there is not unanimity among the authorities upon this subject, as regards an assignee, (see *Pillsbury* v. *Kinggon,*

33 N. J. Eq. 287,) we are disposed to accept the rule above stated. We think consistency with our decision with respect to administrators requires its adoption. It would seem, upon principle, that the same rule in this respect which exists in regard to an administrator, should be held to apply to an assignee under a voluntary assignment. We do not perceive that our statute respecting assignments makes any change of the rule. The assignee, under the above doctrine, is not the representative of creditors, but the agent of the assignor for the distribution of the property assigned. The assignee's duty, as said in *Lund* v. *Skanes Enskilda Bank*, 96 Ill. 153, "is confined to the distribution of the property assigned to him." Any interest in property before fraudulently transferred by the assignor was not assigned to the assignee.

The decree found that there was due to the complainants in the original bill, from the Empire Insurance Company, $4647.40, with interest from April 16, 1886; and that the defendant Bouton was indebted to said insurance company, for capital stock by him taken, in the sum of $17,584.92, and decreed payment by Bouton of the latter sum. In this we find there was error. The decree should only have been against Bouton for the amount found due from him to the complainants in the original bill, and the cross-bill of Cole should have been dismissed as against Bouton. The bill was not filed in behalf of complainants and other creditors, but in behalf of themselves alone.

The decree of the circuit court of Cook county, and the judgment of the Appellate Court, are reversed, and the cause is remanded to the circuit court of Cook county for further proceedings not inconsistent with this opinion.

*Judgment reversed.*