# DAVID FEY

### v.

## THE PEORIA WATCH COMPANY.

*Corporations—Attempted Release by Directors of Stock Subscription— Ultra Vires—Other Subscriptions—Delay—Estoppel—Interest—Directors Not Necessarily Stockholders—Subscription Paper Not Necessary to Show Organization—Calls.*

1.   The attempted release by the directors of a corporation, of one subscriber to the capital stock from the payment of his subscription, does not release another subscriber, not agreeing to such attempted release, from such payment.

2.   A subscriber to the capital stock of a corporation who claims to be released from his subscription by reason of fraudulent inducement used in securing the same, must claim his release at the earliest possible moment.

3.   The installments of a subscription to the capital stock of a corporation draw interest from the date when they become due.

4.   In the absence of statutory requirement to the contrary a director of a corporation need not necessarily be a stockholder.

5.  In the case presented, this court holds that the corporation plaintiff having been organized and having received its charter, the introduction of the subscription paper was unnecessary to show organization.

[Opinion filed December 16, 1889.]

APPEAL from the Circuit Court of Peoria County; the Hon. S. S. PAGE, Judge, presiding.

Mr. ARTHUR KEITHLEY, for appellant.

From a somewhat extensive research I have been able to find but two cases in this State, where, as between the corporation itself and the subscribers to its stock, the question of the validity of a release by its board of directors of some of the subscribers, has undergone judicial inquiry; one of these cases was in the Appellate Court, the other having been incidentally presented to, but directly decided by our Supreme Court.

In Rutz v. The Esler & Ropiequet Mfg. Co., 3 Ill. App. 83, the plaintiff brought suit on a subscription to its capital stock by defendant. The general issue was filed and with it a stipulation of the parties that all defenses might be shown under that plea. The plaintiff's books were introduced in evidence which showed that at a meeting of the board of directors of plaintiff therein "a resolution was passed authorizing an agreement with certain subscribers to the capital stock, by which, upon giving their individual notes for one-half of their subscriptions they were to be released from the payment of the other half."

The court in its decision says: "The courts of this country, with but few exceptions, have held that a release of a portion of the subscribers to the capital stock releases all the subscribers who do not assent to that release, or in some way give their sanction to it." * * * "It destroyed that equality that exists between subscribers according to the terms of their subscriptions, which is the very essence of their contract," and for that reason alone the court in the case cited reversed the judgment of the trial court allowing a recovery and remanded the cause.

The facts in that case being the same under the pleadings as in this, that judgment, we think, should be decisive of this.

Our State Supreme Court within the last eighteen months, in the case of Bouton v. Dement et al., 123 Ill. 142, had occasion to pass upon the question here presented. Dement and others, policy holders in a certain insurance company which was in financial distress, brought a bill in equity against the insurance company and some of the subscribers to its stock, in the nature of a bill of discovery. Cole, the assignee of the insurance company, filed a cross-bill, alleging that Bouton had not paid for his stock. Bouton answering, says in substance that he had among other things given his note for the stock, and that by some internal re-arrangement of the company's affairs, a note of trifling value was given to the company in lieu of the Bouton note and Bouton's note was returned to him. The finding of the Circuit Court, which was affirmed in the Supreme Court was, that Bouton's note stood in place of his liability for that stock; that Bouton was a director and a member of the finance committee of the insurance company; that there were suspicious circumstances attending the after-dealing with the Bouton note tending to show it to have been a device to get rid of Bouton's personal responsibility upon the note; that Page, whose note was substituted for Bouton's, was an employe of Bouton, and financially irresponsible, and that Page's note was accepted by the insurance company in lieu of Bouton's, and was, after having passed through two or three different hands, purchased by Bouton for three-twentieths of the face value of his own note.

The court held that as between Dement, a creditor of the corporation, and Bouton, the transaction was a fraud, and Bouton was still liable upon his stock; but as to the assignee, Cole, he was not entitled to recover anything. Using the language of the court, "the exchange of Bouton's note for that of Page, and the cancellation and delivery up of Bouton's note, being valid and binding on the insurance company, as we find, the company itself could not impeach the transaction

and set it aside, and no more, we think, could the assignee of the insurance company do so. The company, by its assignment, conveyed no greater right in respect of its property, than the company itself possessed."

In Angell & Ames on Corporations, tenth edition, Sec. 531, there is contained this concise statement: "And if a stock company lets off a part of its subscribers, and returns them their money, other subscribers not consenting thereto are discharged from all liability growing out of their original subscriptions."

The case of Memphis R. R. Co. v. Sullivan, 57 Ga. 241, after deciding that all of the stock of which the road was capitalized should be fully subscribed before action brought, says: "It surely can not alter the case if a large and material subscription were merely nominal, and was afterward released because it had always been a sham, and all this had been done without the knowledge and consent of the subscriber, who was thus duped and cheated into his subscription by the sham."

The Supreme Court of Iowa has rendered a valuable decision for appellant upon this point, valuable in anticipation of the argument of appellee. I refer to the case of Gelpcke, Winslow & Co. v. Blake, 19 Iowa, 263. This was an action brought primarily to collect a subscription to the capital stock of a railroad company. The defendant pleaded as one of his defenses that he had been released from all liability on his subscription, his money paid returned to him, his contract of subscription canceled.

The court said that this plea was demurred to because it failed to state that the cancellation and release alleged therein were made with the consent of the creditors and stockholders of said company. The point suggested is unsound, and can not be supported. That there are creditors is mere assumption. It does not so appear from the face of the plea.    *    *    *
As respects the assent of the stockholders to make the rescission of the contract valid, this is necessarily implied in the language of the plea. The allegation is, that it was the company that canceled the contract and released the defendant

Who, in law, constitutes the company, if it be not the stock-holders? The distinction which the demurrant would make between them, derives no support from the authorities cited.

There was no lack of power, therefore, in the company, nor do we think there would have been in the board of direct-ors, to rescind the contract, with or without the consent of the stockholders or others, when it was done in good faith; it would be time enough for the courts to take care of the creditors when they were judicially advised by the plead-ings or evidence in the cause, that the same were in jeopardy.

The Pittsburgh & Connellsville R. R. Co. brought suit in Pennsylvania to collect a subscription to its capital stock after a lapse of some time, and after some of the stockholders had been released. The Supreme Court of that State, speak-ing through Judge Woodward, 32 Pa. St., on page 31, says: " McCully's undertaking was not only to the company, but with the other subscribers. His subscription and theirs were mutual consideration for each other, and to let them off and hold him is to enforce a contract he never made, * * * and when the company let off part of its subscribers and returned to them their money without the consent of the defendant, actual or implied, they discharged him from all liability growing out of his original subscription.

On page 141 of the same volume there is another decision announcing substantially the same principle. See also Miller v. Second Jefferson Building Association, 50 Pa. St. 32.

There are numerous other decisions touching somewhat remotely upon the question here presented, which it is not advisable to cite, as the foregoing clearly show how the vari-ous courts have been impressed when confronted with such facts as are contained in the record of the case at bar.

No doubt appellee will cite many authorities, for many there are, including Morawetz on Private Corporations, show-ing that a release of the stockholder by the board of directors is *ultra vires;* but when those cases are examined it will be found that those releases are being complained of by some-body affected thereby, rather than the corporation itself.

Messrs. JACK & TICHENOR, for appellee.

Shorn of all verbiage, the pleas claim that because some one, not named, by some authority, not stated, released certain other subscribers from their liability without any consideration whatever, then the defendant should be released from his liability. Each plea, upon its face, shows that the alleged release was *nudum pactum*, and therefore void. Consequently that the alleged fraudulent subscriptions upon which the defendant relied are binding and of full effect against the subscribers, notwithstanding the alleged release. "The reason is obvious; the agreement of discharge is without consideration." Hayes et al. v. Insurance Co., 125 Ill. 639. It would seem as though no argument should be necessary upon the proposition that a defense based upon an alleged agreement which was not only without consideration, but *ultra vires*, will not be entertained ; and we should submit the question upon this simple proposition, were it not that the Appellate Court of the Fourth District seems to have sanctioned the defense in Rutz v. E. & R. Manufacturing Co., 3 Ill. App. 83. In this case Judge Allen says: " The courts of this country, with but few exceptions, have held that a release of a portion of the subscribers to the capital stock, releases all the subscribers who do not assent to that release, or in some way give their sanction to it," citing Angell & Ames on Corporations, and some Pennsylvania and New York authorities cited by the author of that work in support of his text.

The language of the text may be correct in principle; but it necessarily involves certain well recognized principles : first, that the release must be founded upon some legal consideration, and second, it must be granted by some competent authority; otherwise it is no release. In the Pennsylvania cases cited by Angell and Ames, and by Judge Allen, the railroad companies, already organized, had opened their books for subscriptions to their capital stock, and had collected large subscriptions from certain shareholders. Subsequently their projects were abandoned, and the amounts already collected from some of the subscribers had been returned and their subscriptions canceled. It was held under these circumstances that no recovery could be had against other sub-

scribers. The New York cases cited are both cases of voluntary subscriptions to private enterprises, dependent for their consideration entirely upon the mutual obligations of the subscribers to assist in the furtherance of a common undertaking. In all of the cases cited, the subscribers dealt with a power already in existence and competent to receive subscriptions and to control or cancel subsisting obligations. Numerous cases in Pennsylvania draw the distinction between a subscription to the capital stock for the purpose of enabling the company to organize, and a subscription after the company has been organized. Thus it is said: "Where subscriptions are made to the stock of a proposed corporation, *previous to and for the purpose of procuring* a charter, any conditions annexed thereto, whether written or parol, are void. But after the organization of the company a condition is binding and obligatory, subject, however, to the qualification that the rights of co-subscribers are not affected thereby." And again: "The commissioners (to receive subscriptions preparatory to organization) are held to have only limited statutory powers, of which the subscribers are bound to take notice. They have no right to vary the terms of subscriptions, and any conditions are held to be void, as a fraud upon the State, upon corporate creditors and upon other subscribers." McCarty v. S. & N. B. R. R. Co., 87 Pa. St. 332; Miller v. H. J. & S. R. R. Co., Ib. 59; Boyd v. P. B. R. R. Co., 90 Pa. St. 169; Bedford R. R. Co. v. Bowser, 48 Ib. 29.

It is said by a recent text writer: "A subscriber for stock in a corporation can not obtain a cancellation of his subscription, except by the unanimous consent of the other subscribers." Cook on Stockholders, Sec. 169.

Conceding that under our statutes a stockholder may be released by the unanimous consent of the other subscribers, it will scarcely be claimed that the other subscribers consenting thereto, can refuse to pay their subscriptions upon the ground that the release was made in fraud of their rights as stockholders. In this respect the case of Gelpcke et al. v. Blake, 19 Ia. 263, cited by appellant, fails to sustain his posi-

tion; for in that case the court recognized the doctrine that a release to be operative must be made with the consent of all the other stockholders of the company. If appellant consented to the release of Cole, he can not avoid his subscription by reason of that release; for Judge Allen says in the Rutz case, the fraudulent release of one subscriber releases all who do not assent thereto.

In O. & P. R. R. Co. v. Baily, 24 Vt. 465, the same questions as here, were presented. The court held that the report of the commissioners licensed to open books for subscription, and to hold the preliminary meeting for organization, must be *conclusive* upon the validity of the subscriptions, on the amount thereof, and upon the legal organization of the company, so far as the stockholders are concerned; that one of the purposes of calling the meeting of the stockholders preliminary to organization, is that the commissioners may be enabled to certify that the required amount of stock has been raised.

Concluding then, as we must, that the stock was fully subscribed, and as a logical sequence that all the subscriptions were vaild and binding, what is the effect of the alleged subsequent release, without consideration, of one of the subscribers? Manifestly, if without consideration, the release was, for that reason alone, inoperative and void, and the subscription remained valid and binding. But beyond this, if the effect of the release is to reduce or impair the capital stock of the company, or if made without the consent of the remaining stockholders, it must, in order to be valid or effective, be authorized by some statutory authority. No such power or authority is given to the directors, or to any officer or agent of the corporation. It is therefore *ultra vires;* and for this reason, the subscription remains valid and binding notwithstanding the release.

LACEY, J. This was a suit in assumpsit by the appellee against the appellant to recover from the latter the sum of $1,000 and interest on his subscription to the capital stock of the former, it being a corporation organized for the purpose of carrying on the manufacturing and sale of watches in the

city of Peoria, with a capital stock of $250,000, consisting of 2,500 shares of $100 each, with a duration of ninety-nine years. The subscription paper which was signed by appellant bore date December 1, 1885, which he signed for ten shares. This subscription was preparatory to organization, which took place in December, 1885. There was a trial by the court, a jury being waived, and finding and judgment for appellee for $1,120. The main and chief error assigned and relied upon by appellant for reversal, was the action of the court in sustaining appellee's demurrer to his 4th, 5th, 6th, 7th and 8th pleas, and in not allowing the same defense set up in them to be made on the plea of the general issue. The substance of the special pleas is that the agents of the appellee prior to its organization (those who were obtaining the subscription), preparatory thereto, for the purpose of effecting organization, made a secret agreement with one Johnson Cole, a subscriber to the capital stock of 200 shares, that he should not be called upon to pay the amount of the subscription or any part thereof, and that said subscription so fraudulently written and signed was shown to appellant as genuine, and he subscribed in faith of it, and that the appellee released Cole from the payment of any part of his said subscription in pursuance of the agreement, without the payment of any money; that the release was made of Cole's and other subscriptions without consideration to appellee and with intent to give such released subscribers an unfair advantage. There are other points of defense urged by the appellant, which will be noticed hereafter. The main point of the defense relied on, the supposed release by the directors of the subscription, we will notice first and more at large. Besides the errors assigned as to the sustaining of the demurrer to the pleas, the appellant also claims that the court ruled out certain evidence offered by him tending to show, and in fact showing, that the directors released as far as was in their power, the said Cole from his subscription without consideration.

We will consider both of these assigned errors together as the supposed defenses of appellant are governed by the same principle of law. The appellant, in his brief, disclaims any

intention of insisting that any secret agreement to release, as charged in the plea, made by the parties procuring the subscription of Cole antecedent to or at the time of taking it, would have the effect to release his own. It is admitted that such agreement would not have that effect. It is well to make such admission, for such is the general tenor of all the decisions, and the point was expressly held in Melvin v. The Lamar Insurance Co., 80 Ill. 446. That question being at rest we will not further allude to it in this opinion. The next question arising is, did the release by the directors, so far as it could be done by them, have the effect to release the other subscribers to the capital stock, not agreeing to such release, the appellant among them, from their subscription.

It is most strenuously urged by the appellant that it did, and that in law such action of the directors of a corporation does have that effect. We are referred to the following authorities in support of this doctrine. Rutz v. The Esler & Ropiequet Mfg. Co., 3 Ill. App. 83, in which the court says that "the courts of this country with few exceptions have held that a release of a portion of the subscribers to the capital stock releases all the subscribers who do not assent to that release or in some way give their sanction to it," etc. We are also cited to Bouton v. Dement, 123 Ill. 142; also Gelpcke, Winslow & Co. v. Blake, 19 Ia. 263; Angell and Ames on Corporations, 10th Ed., Sec. 531; and P. & C. R. R. Co. v. McCarty, 32 Pa. St. 31; Miller v. S. J. B. Asso., 50 Penn. St. 32. The case of Rutz v. The E. & R. Mfg. Co., 3 Ill. App., *supra*, seems to support the claim, but we are inclined to think the learned judge who wrote the opinion has fallen into error in the statement he makes in regard to the weight of authorities and also the decision. It is not necessary for us to go to other States and other courts to find authority for the doctrine that the releasing of a subscription to the capital stock of a corporation without the consent of the stockholders does not release the other subscribers. We have it in the decisions of our own Supreme Court. In Melvin v. The Lamar Ins. Co., 80 Ill., *supra*, it was expressly held that as against any stockholder not assenting, a subscriber to the capital stock could not

be released from his subscription thereto by action of the directors where such release was made without full payment. In the above case one of the stockholders filed a bill in equity to compel Cushman & Hardin to refund certain money of the company withdrawn by them in pursuance of an agreement between them and the directors without consent of the stockholders, whereby they were released from their subscription to 5,500 shares of their capital stock, and certain money refunded to them which they had paid in on their subscription, and the court held, that notwithstanding such release, they must repay the money and also be compelled to occupy the position of stockholders in reference to their 5,500 shares; that the action of the directors was *ultra vires* and void as to such attempted release. The court in the above case holds that, "each stockholder has a vested right in the contract of subscription of every other stockholder," citing Chandler v. Brown, 77 Ill. 335.

In the decision, in making further comments, the court says: "Holding, as we do, that this option to surrender these shares of stock and take back the money and securities was invalid and to be disregarded, as a fraud against the other stockholders, the transaction of the directors of the company in the cancellation of the stock and in the payment of the money and securities, must be held here as of no effect. * * * The authority to collect and distribute does not embrace the power to release without payment. The courts have separately held that an attorney intrusted with a claim for collection has no power to discharge it without payment in full, and that to compromise a claim under such circumstances requires a special authority from the principal. Nolan v. Jackson, 16 Ill. 272; Viking v. McClellan, 61 Ill. 311."

The court cites the above extract in regard to the duty of an attorney to his client as being analogous to the position of the directors of a corporation in respect to their duties in the collection of the subscription to the capital stock. They, no more than an attorney, can release or give away the assets of the company. They stand in the same relation. The appellant insists that there is a distinction between a stockholder

asking relief against the acts of the directors in an attempted
release of subscription, and a creditor; that as to the former
the directors represent them and can release the subscription
without consideration, but as to the latter they can not with-
out the consent of the creditors.    The case of Bouton v.
Dement, 123 Ill. 142, is cited as a case in point, where it was
held that the assignee of a corporation could not question the
release of a subscription of a certain party which had been
fraudulently made by the directors, but that the creditors
might.    As we understand that decision it was based on the
ground that the stockholder had ratified the action of the di-
rectors, and as to the assignee of the corporation and the
stockholders the release was binding, but not so as to the
complaining creditors.    The court in that case holds this lan-
guage: "As the transaction of the substitution of the note of
Page in the place of that of Bouton and the cancellation and
surrender up of Bouton's note was approved and ratified by
the directors and stockholders of the Empire Insurance Com-
pany of Wheaton, and the company afterward used the Page
note and hypothecated it with a bank to raise money, it is
insisted that the transaction was a valid one and binding upon
the company.    This might be so as to the company, but yet
be otherwise as against creditors.    We are of the opinion
that the transaction above referred to was valid as against the
insurance company but not so as against creditors."

It will be seen, then, that the release of the insurance com-
pany was put in that case on the ground that the stockholders
had ratified the release of the subscriptions to the capital
stock.

In the case above cited of Melvin v. The Lamar Ins. Co., 80
Ill., *supra*, the only relief sought was by a stockholder, on the
ground that the release of a subscriber to the capital stock by
the directors, without consideration and without consent of
the stockholders, was void, which claim the court sustained
and granted the relief, holding the attempted release *ultra
vires*.    We find abundance of authority for this ruling of the
court in the text books and adjudged cases.    In Morawetz on
Private Corporations, Sec. 117, we find this passage, to wit:

"So if the directors of a corporation attempt to release a por-
tion of the shareholders and cancel their shares, this will not
discharge other shareholders from the obligation of their
contracts, for such release and cancellation being unauthorized,
would not bind the corporation, and would be wholly void."
The authorities cited in the note in support of the text are
numerous. Whittlesy v. Frantz, 74 N. Y. 456; Jewett v.
Valley Ry. Co., 34 Ohio St. p. 601; Agricultural College In.
Co. v. Fitzgerald, 15 Jus. 489; Compose Remsbon, etc., Plank
Road Co. v. Witzel, 21 Barb. 56; Phillips v. Covington
Bridge Co., 2 Metc. (Ky.) 219, 223; Macon, etc., R. R. Co. v.
Vasan, 57 Ga. 314; Litle v. O'Brien, 9 Mass. 423.

We think it would be a dangerous doctrine to hold that the
directors of a private corporation could by their wholly
unauthorized act release, without the consent of the stock-
holders, any of its debts, and give away its assets, and still
more dangerous and contrary to all the rights of the other
stockholders, if by the release of one of its subscribers with-
out consideration, they could dissolve the corporation itself;
for the effects of such release might be, that enough of the
shareholders would be absolved to entirely dissolve the corpo-
ration, to the great detriment of other shareholders. We
think the law could never sanction such a rule. It was one
or two years after the supposed release of Cole before the
bringing of this suit, and hence before this attempt on the
part of the appellant to obtain release from his subscription.
And we are inclined to think that he should be estopped now
from insisting on the defense he makes. He should at once or
within a reasonable time, have taken steps to have his sub-
scription canceled, and not wait and speculate on the success
or non-success of the enterprise. In re London & Stafford-
shire Fire Ins. Co., reported in Chancery Division Law Re-
ports, 1883, Vol. 24, page 194, it was said a party who claims
to be released because of some fraud in inducing him to be-
come a member of an incorporation, must claim his release
at the soonest possible moment, and the burden o‘ proof is on
him, if much time elapses, to show that he had no notice.
"He can not be allowed to play fast and loose, and be a

stockholder if things turn out favorable, and not so, if unfavorable."

Neither in the appellant's pleas nor in his offer to prove the release has any allegation or offer to show that he had no notice of this release of Cole in time to have made his election, whether he would be bound by his subscription or not, been made. Having failed to do so under the authority of the above ruling, he would be presumed to have known about the release of Cole at the time it was done, and not having taken any steps to release himself from the subscription, be bound, even if he could have never claimed a release. See also authorities to the same point. Morawetz on Private Corporations, Sec. 108, and cases cited; Upton v. Trebblecock, 91 U. S. 45, and cases cited.

The appellant makes the point that it was error to compute interest on his subscription. We think not. The subscription was a written instrument and under our statute after it became due, as the installments were called for, such installment would draw interest. The last and final installment was called for November 18, 1886, more than two years prior to the date of the judgment in June, 1889.

The objection is made that the directors are not stockholders. We do not understand that such an objection as that could be made in this case, and our statute does not require it, and in the absence of such requirement one not a stockholder may be a director. Ex parte Stock, N. J. Chan. 73; Stahl v. McDaniel, 21 Ohio St. 354, 367; Wright v. R. R. Co., 117 Mass. 226; In re Steamboat Co., 44 N. J. Law, 529; Dispatch Line v. Ballamy Mfg. Co., 12 N. H. 205.

We can not see what the subscription paper has to do with this case; the company has been organized and received its charter, and it is not necessary to show any subscription paper, to show organization. Besides, appellant in this action can not question the organization. Rice v. R. R. I. & A. R. R. Co., 21 Ill. 93; Ill. G. T. R. R. Co. v. Cook, 29 Ill. 237. At least, if the corporation is *de facto*, the burden is on him to rebut by showing want of organization.

The objection raised that the appellant is released because the appellee accepted the subscription of C. M. and E. D. Howard in the Fredonia Watch Company, is not well taken. "A subscriber for stock in a corporation can not defeat an action to collect such subscription by the defense that the directors or corporation itself have done corporate acts which are beyond the corporate powers. There are other remedies open to the subscriber." Cook on Stockholders, Sec. 187; People v. Barnett, 91 Ill. 422; People v. Logan Co., 63 Ill. 74. We think the call is sufficient to authorize recovery. They call for payment of all subscriptions except that of E. D. Howard, trustee of the Fredonia Watch Company, which had been settled for in another way. It had been exchanged for the property of the Fredonia Watch Company with Howard, its trustee, and at least *prima facie* Howard had already paid it.

Seeing no error in the record, the judgment is affirmed.

*Judgment affirmed.*

C. B. SMITH, J., dissents. I do not agree with the reasoning or conclusion reached by a majority of the court. The controversy is between the corporation itself and the defendant. No rights of creditors are involved. The simple question as to whether a corporation can release some of its subscribers to its stock and compel others to pay, is alone presented by this record. I hold they can not. The case of Edward Rutz v. The Esler & Ropiequet Mfg. Co., 3 Ill. App. 83, and the case of Bouton v. Dement et al., 123 Ill. 142, are authority in point against the majority of the court. I think the judgment ought to be reversed.