### Louis A. Mills, Assignee, v. Clinton Bear.

1. VOLUNTARY ASSIGNMENTS — *What the Assignee Takes.* — The assignee of an insolvent debtor takes only such rights in the property assigned as the assignor had at the time the assignment was made.

**Mortgage Foreclosure.**—Appeal from the Circuit Court of Macon County; the Hon. EDWARD P. VAIL, Judge, presiding.    Heard in this court at the November term, 1900.    Affirmed.    Opinion filed June 10, 1901.

I. R. MILLS, attorney for appellant.

HUGH CREA, attorney for appellee.

MR. JUSTICE BURROUGHS delivered the opinion of the court.

On November 16, 1895, Lewis B. Casner was conducting a private banking business in Decatur, Illinois, and owned a quantity of land in Macon and adjoining counties.    Appel-lee lived in Mercer county, Illinois, and was a nephew of Casner.

On the day mentioned Casner wrote to appellee, offering to sell him 320 acres known as the " Eichner farm," situ-ated in Macon county, for $24,000.    Of this sum $6,000 to be paid in cash in a few days, some real estate in Decatur, known as the " Stecher " property, to be accepted by Casner

at $9,500, and the balance in cash on the first day of March, 1896, less a note of $5,000 given by Casner to appellee and due on that day.

Appellee accepted the proposition of his uncle and sent him the cash payment of $6,000 by drafts.

On April 2, 1896, appellee visited Decatur to close up the land transaction with and receive a deed from Casner. An abstract of title was presented to Mr. Webber, an attorney, who acted for appellee. An examination of such abstract by the attorney, disclosed a mortgage of $10,000 on the farm, given by Casner to Gorin, the existence of a number of judgments, in the aggregate amounting to about $4,000, as apparent liens on the premises, and, using the language of Mr. Webber in his testimony, " over a dozen defects in the title."

An adjustment was then made between Casner and appellee; Casner was charged with the " Stecher " property at $9,500; with the cash $6,000 already paid; with a note of $5,000 and another of $2,000 and accrued interest on each, which notes had been given by Casner to appellee and were then due; and with the interest then accrued on a $5,000 note from Casner to appellee, which note was not payable until several months thereafter, and the principal thereof was not taken into account in the adjustment in question.

The charges against Casner, in the aggregate, amounted to $23,048. He was credited with contract price of the farm, $24,000, less the $10,000 Gorin mortgage thereon, making $14,000, leaving a balance due appellee of $9,048.

As evidencing the above balance, Casner gave his note to appellee for that amount and secured the same by mortgage on other real estate then owned by him. This mortgage is the same mortgage foreclosed in the case at bar.

The imperfect condition of the title to the farm and the judgments referred to, which were apparent liens, stood in the way of a complete and immediate close of the transaction between Casner and appellee. Appellee did not wish to rely upon the covenants in a warranty deed which Casner and wife had executed ready for delivery to him. The

result was, it was agreed in writing, between Casner and appellee, that appellee's deed to Casner for the " Stecher " property, instead of being delivered to the grantee, should be placed in the hands of Mr. Webber to be held by him in escrow until the judgments mentioned should be gotten rid of and until the title to the farm conveyed to appellee should be cleared of the defects thereon to the satisfaction of Mr. Webber. When Mr. Webber should be satisfied with the title, he was authorized, by the same instrument in writing, to deliver the deed to the " Stecher " property to Casner.

This agreement was made on the evening of April 2, 1896, but was not reduced to writing and signed until the next morning. The deed to the " Stecher " property and the instrument embracing the conditions on which such deed was to be placed in his hands in escrow, were then at once delivered to Mr. Webber.

Appellee took the mortgage securing Casner's note for $9,048 to the recorder's office for record, and then, about 10 A. M. of April 3, 1896, left for his home in Mercer county. Before leaving, he directed Mr. Webber to look after his, appellee's, interest, in any way required. About four o'clock in the afternoon of the same day, Mr. Webber was called for consultation with Mr. Casner and Mr. Dawson in relation to the condition of Casner's bank. Mr. Webber declined to act for Casner until appellee's affairs with Casner were entirely adjusted.

At that time, Casner owed appellee a note of $5,000, not then due. Mr. Webber had then in his hands, the deed to the " Stecher " property and the written instrument under which he held such deed in escrow. After several hours of negotiation between Mr. Webber, representing appellee, and Mr. Casner, it was agreed between them, that all matters between appellee and Casner should be adjusted as follows :

1. Casner to have his $5,000 note, not due, canceled and surrendered to him.

2. Appellee to have his deed to the " Stecher " property then held in escrow, surrendered to him for cancellation.

3. Casner, to be released from his undertaking to clear the title to the farm, conveyed to appellee, as specified in the instrument of escrow, and an agreement to that effect was written at the foot of the instrument of escrow and signed by Casner on the evening of April 3, 1896.

The $5,000 note was afterward canceled and surrendered by appellee to Casner, and Webber surrendered the deed to the "Stecher" property to appellee.

After Casner had signed above mentioned modification of the instrument of escrow, Mr. Webber went into the consideration of the details of the condition of the bank with Casner and Dawson. In about three hours afterward, Casner executed a deed of assignment to Dawson, which was filed in the office of the county clerk on the morning of April 4, 1896. Dawson, as assignee, commenced carrying out the duties of his trust.

Appellee, on September 11, 1897, filed in the Circuit Court of said county, his bill for the foreclosure of the mortgage given him by Casner securing the note in question for $9,048, making Dawson, as assignee, Casner and other parties, defendants. Dawson, as assignee, filed his answer to appellee's bill of complaint, which is as follows:

"Said assignee admits that he is assignee; that he is not fully advised as to the making, execution and delivery of said mortgage as stated in said bill of complaint or the circumstances surrounding the same, but prays strict proof of all the many facts set forth in said bill of complaint in relation thereto. He denies that Lewis B. Casner is indebted to Clinton Bear in the full sum claimed in the said bill, and alleges that as assignee he is entitled by way of set-off as against the alleged claim of the said Bear, to the sum of $4,000, being balance due from said Bear to said Casner and defendant, as assignee, on account of purchase by Bear of the farm known as the "Eichinger farm," and prays that an accounting may be had of all money due from said Casner to said Bear, and that this defendant may be allowed the sum of $4,000, by way of set-off."

Casner having died intestate, a supplemental bill was filed by appellee making his heirs at law parties defendants.

Dawson having resigned as assignee, Louis A. Mills

(appellant) was appointed in his stead, and Mills, as assignee, answered the supplemental bill. His answer is, in substance, the answer of Dawson, as assignee, to the original bill.

On a final hearing in the cause, the court below found and decreed that appellee was entitled to payment of said note of $9,048, and that said mortgage should be foreclosed to make the amount due thereon, and that the assignee was not entitled to any set-off as against any part of said note. From such decree Mills, as assignee, has appealed to this court and urges a reversal thereof upon the alleged grounds that the court erred in not allowing the set-off claimed by him in his answer.

Counsel for appellant contends that the evidence shows the modification of the contract under which Mr. Webber held the deed to the "Stecher" property in escrow secured to appellee not only the payment of the $5,000 note owing to him by Casner before it was due, but also enabled appellee to get that property, worth $9,500, for said note; and that the modification was made in contemplation of a general assignment by Casner, and on that account was null and void as against appellant, his assignee, who represents his general creditors.

It is not necessary to decide whether the evidence does or does not show that said modification was in fact made with such contemplation, for, as we view it, under the pleadings no such question is raised, because neither the answer of Dawson, the first assignee of Casner, nor that of appellee, his successor, alleges an agreement was made between Casner and appellee in anticipation of, or in view of an assignment by the former, nor is there any averment therein that appellee was attempting to obtain a preference over other creditors or that Casner was intending to give a preference to appellee when he assented to and executed the modification of the agreement of escrow.

It is apparent that under the pleadings the only question involved is whether there is any set-off against the note which existed in favor of Casner before he assigned to Dawson.

The evidence convinces us, as it must have the learned chancellor who entered the decree in the Circuit Court herein, that Casner and appellee accounted fairly on April 2, 1896, in the presence of Mr. Webber, when the note and mortgage in question were executed and delivered; and that the only difficulty which confronted appellee was the defective condition of the title to the farm he had purchased. He was paying $75 an acre for the land, and naturally wanted the title to be merchantable and that Casner should perfect it before he should receive absolutely all of the purchase price therefor; hence the making of the agreement of escrow, and leaving it, together with the deed he had made to Casner for the " Stecher " property in part payment of the farm, with Mr. Webber until the title thereof was perfected, when said deed to the " Stecher " property was to be delivered to Casner.

As appellee lived in Mercer county and wanted to return home, it was but natural, before he left, to make the agreement of escrow which is as follows :

" Know all men by these presents, that whereas L. B. Casner has sold and by warranty deed conveyed a half section of land in section nineteen (19) and twenty (20), Tp. sixteen (16) N., range three (3), east 3d P. M., as per deed March 1, 1896, to Clinton Bear, and whereas there are some defects in the title and other judgments, etc., that are liens thereon, and whereas the defects of title and all liens and incumbrances are to be cleared off of said title and judgments released by L. B. Casner except the ten thousand dollar mortgage now a lien thereon, and whereas Clinton Bear has sold lot 7, block 9, Western addition to Decatur to L. B. Casner, and whereas it is mutually agreed by and between each of said parties that the deed from Clinton Bear to L. B. Casner shall be and the same is hereby deposited with A. G. Webber in escrow until the title of said half section of land shall be cleared and freed of said defects and judgments now upon the same, so that A. G. Webber will approve the said title, and when the said title is so cleared and approved A. G. Webber shall deliver said deed from Clinton Bear to L. B. Casner, and each party from the date of delivery thereof, may rely upon the covenants of warranty of their respective deeds.

Witness our hands and seals this 3rd day of April, A. D. 1896.

L. B. CASNER, [L. S.]
CLINTON BEAR. [L. S.] "

And to leave it and the deed therein described with Mr. Webber.

And the evidence further shows that at the time the above mentioned agreement and deed were left with Mr. Webber appellee authorized Mr. Webber to look after his interests in and about such purchase, in any way required, leaving it all to him. After appellee had left for home, Mr. Webber and Mr. Casner talked over the matter of such trade further, and concluded to change the agreement of escrow and to evidence such change by a written modification written at the foot thereof, which is as follows:

" In consideration of the payment of my five thousand dollar note to Clinton Bear and the release of my above mentioned obligation to clear the title as stated, I hereby authorize and direct A. G. Webber escrow to return the above mentioned deed to said lot 7 in rescission of the above agreement, that the deed may be canceled by Clinton Bear.
April 3rd, 1896.

L. B. CASNER. [SEAL.]"

And in pursuance thereof, the $5,000 note mentioned therein, and the deed to the "Stecher" property was canceled, so that there was a full settlement between Casner and appellee before the former made the general assignment to Dawson, and neither Casner nor his assignee, without the consent of appellee, could afterward abrogate such settlement.

Clearly, what appellant as assignee of Casner is seeking in this suit, is the difference between $9,500, the value of the "Stecher" property, and the $5,000 note of Casner which appellee canceled to get the property back under the modified agreement, on the ground that Casner, as against his creditors, fraudulently gave such difference to appellee, but appellee, as such assignee, took only what rights Casner had at the time the assignment was made. Casner did not have such right, when he assigned to do that which appel-

lant is now contending for, and appellant, as his assignee, stands in his shoes, and can not for that reason open up the agreement modifying the contract of escrow. Lund v. Skanes Enskilda Bank, 96 Ill. 181; Bouton v. Dement et al., 123 Ill. 142; Hinkley v. Reed, 182 Ill. 440.

The decree of the Circuit Court being, under the pleadings and the evidence, in accordance with the equities of the parties, it will be affirmed.