The First National Bank of Peoria *et al.*

*v.*

The Peoria Watch Company *et al.*

*Opinion filed June 19, 1901.*

1. Corporations—*when stockholder is not liable to creditor on stock subscription.* If a person subscribes for a certain amount of stock, which he does not pay for but surrenders to the corporation, which sells the stock to other parties who pay for the same in full, there is no liability on the part of the original subscriber to creditors under section 8 of the Corporation act, concerning the liability of stockholders for amounts unpaid upon their subscriptions.

2. Same—*surrender of stock to a corporation is, in effect, a purchase.* A corporation may, if it acts in good faith, buy and sell shares of its own stock, and the surrender of stock to the corporation by a stockholder is, in effect, a purchase by it.

3. Res judicata—*suits must be between same parties if former judgment is not in rem.* A decree in a suit by a bank, which finds the defendants to be stockholders in a corporation and orders them to pay a judgment held by the bank, is not *res judicata* as to the liability of defendants, as stockholders, in a subsequent suit against them by a different bank.

*First Nat. Bank* v. *Peoria Watch Co.* 93 Ill. App. 502, affirmed.

Appeal from the Appellate Court for the Second District;—heard in that court on appeal from the Circuit Court of Peoria county; the Hon. Leslie D. Puterbaugh, Judge, presiding.

Arthur Keithley, for appellants:

A stock subscription is a trust fund. *Clapp* v. *Peterson,* 104 Ill. 31; *Mining Co.* v. *Mining Co.* 116 id. 174.

A stockholder is bound by a subscription notwithstanding a release by the company and new subscription procured in lieu thereof. *Cartwright* v. *Dickinson,* 88 Tenn. 476; *Alling* v. *Wenzel,* 133 Ill. 265.

The purchase of its own stock by a corporation cancels such stock. *Belnap* v. *Adams,* 22 So. Rep. 382; Morawetz on Corp. secs. 112-114.

A subsequent creditor can avail himself of a wrongful release of the stockholders. Cook on Stockholders, sec. 170, notes; Morawetz on Corp. sec. 827; *Griswold* v. *Seligman,* 72 Mo. 110.

The decree in the *German Bank case,* finding Cole and Gish stockholders and liable, is binding and conclusive in this case. Black on Judgments, secs. 603-605; *Kolb* v. *Swann,* 68 Md. 516; Thompson on Corp. sec. 8665; Cook on Stockholders, sec. 268; *Mining Co.* v. *Mining Co.* 157 U. S. 691.

There can be no novation or substitution of one subscriber for another as against a creditor who has the right to determine for himself whom he will accept as his debtor. Morawetz on Corp. sec. 808; *Barker* v. *Keown,* 67 Ill. App. 433.

JACK & TICHENOR, for appellees:

Under our statute a subscriber may have his stock forfeited for non-payment of calls. If the corporation acts in good faith no one can question the validity of the forfeiture except the subscriber. After forfeiture the subscriber ceases to be a member of the corporation, and is no longer liable for assessments or for corporate indebtedness. Thompson on Corp. secs. 1792, 1794, 1803; Cook on Stockholders, secs. 127, 177; *Mills* v. *Stewart,* 66 Barb. 444; 41 N. Y. 384; *Allen* v. *Railroad Co.* 11 Ala. 450; *Mandel* v. *Swan Land Co.* 154 Ill. 177.

A corporation may acquire the title to its own stock, either by forfeiture or by compromise with the original subscriber, or, in our own State, by direct purchase. It may then re-issue the stock to any third party, provided the transaction is in good faith and no injury is done to existing creditors. Cook on Stockholders, sec. 177; *Perkins* v. *Union Button-hole Co.* 11 Allen, 273; *Alling* v. *Wenzel,* 133 Ill. 264; *Mining Co.* v. *Mining Co.* 116 id. 170; *Insurance Co.* v. *Swigert,* 135 id. 150.

Mr. Justice Cartwright delivered the opinion of the court:

Appellants, the First National Bank of Peoria and Charles R. Wheeler, a stockholder of the Peoria Watch Company, by their amended bill filed in this case in the circuit court of Peoria county alleged that said company was organized as a corporation in the year 1885, with a capital stock of $250,000; that the appellee Johnson L. Cole subscribed for two hundred shares of stock of the par value of $20,000; that the appellees Moses N. Gish and Joseph N. Brodman became subscribers for stock to the amount of $500 each; that the corporation became indebted to the complainant the First National Bank, and afterward ceased doing business, abandoned its corporate existence, disbanded and disorganized; that said Cole, Gish and Brodman never paid their subscriptions, or any part thereof, and that all other subscriptions were paid except that of one Truesdale and those of certain others who had become insolvent. The corporation and its stockholders were made defendants, and the prayer of the bill was that the delinquent stockholders be decreed to pay the entire amount of their subscriptions, and that a receiver should be appointed and the corporation wound up. The defendants were all defaulted except Cole, Gish and Brodman, each of whom answered. Cole admitted that he made the subscription of $20,000, and alleged that he was released from his subscription, which was assumed by the corporation; that he assigned his subscription to the corporation and it sold the entire amount of the stock for which he had subscribed to other parties, and received payment therefor in full and issued certificates of the stock to such purchasers. Gish answered that he never subscribed for five shares of stock but did subscribe for two and a half shares, at the par value of $250; that he disputed the claim that he subscribed for five shares, and that the controversy was settled by the corporation taking payment for two and a half shares of stock and

he surrendered the balance of the alleged subscription. Brodman answered that he subscribed for five shares and paid the first assessment of ten per cent; that he claimed a defense against the subscription, and that the corporation forfeited the stock, retaining what he had paid, and re-issued the stock to persons who paid in cash the full par value of the same. Replications were filed and the cause was referred to a master, who reported in favor of the defendants and recommended a dismissal of the bill. The court overruled the exceptions of the complainants to the master's report and entered a decree dismissing the bill, which has been affirmed by the Appellate Court.

Complainants proved that the corporation was indebted to the First National Bank in the amount of its promissory note dated March 18, 1891, for $10,607.41, drawing eight per cent interest. Most of the facts were then agreed upon by written stipulation, with some oral evidence, and the facts so agreed upon and proved are as follows: The defendant Peoria Watch Company was organized as a corporation in the year 1885 with an authorized capital of $250,000, which was never increased. The defendant Johnson L. Cole was one of the original subscribers to the amount of $20,000. The defendants Moses N. Gish and Joseph N. Brodman each subscribed for stock to the amount of $500. Cole paid nothing on his subscription, and soon after the organization the directors passed a resolution assuming the stock subscribed for by him and providing for obtaining new subscribers for the same and issuing said stock to new purchasers as it should be paid for in full. The directors then took subscriptions for said stock subscribed for by Cole to the amount of between $6000 and $7000, which was fully paid for and certificates of the stock were issued to the subscribers. The defendant Moses N. Gish settled with the corporation for one-half of his original subscription, and he took two and a half shares, which were paid for and the company released the balance. The defendant Joseph

N. Brodman paid only ten per cent of his subscription. About March 1, 1889, the directors issued a statement to the stockholders that the amount of stock paid up and issued was approximately $210,000; that there remained about $40,000 of stock which had been forfeited by the subscribers and never paid up or issued; that the subscribers therefor were insolvent, and the management had decided to ask the existing stockholders to take said unissued stock in proportion to stock which they held and to pay the par value thereof to the company. The stockholders accepted the proposition and subscribed for and paid into the treasury the par value of all said stock, and at least $40,000 so subscribed was paid into the treasury. The several balances of the subscriptions of Cole, Gish and Brodman, together with those of other stockholders then in default, were embraced in the amount of subscriptions stated and referred to in the circular as in default, and the shares subscribed for by them were taken and paid for by the other stockholders. All the unissued capital stock was issued up to the limit of the total authorized capital and was paid for at par, so that the entire capital stock of $250,000 was subscribed and paid for in full. Stock of the defaulting subscribers which was so taken was made preferred stock to the extent of eight per cent annual dividends thereon as a first charge on the net profits of the company.

It is first insisted that the decree was erroneous because Cole, Gish and Brodman are bound in the law by their subscription, and may be compelled to pay the same notwithstanding the release by the corporation, the new subscriptions in lieu thereof and the payment in full for the stock. The supposed liability is created by section 8 of the act concerning corporations for pecuniary profit, under which the Peoria Watch Company was organized. That section provides that stockholders shall be liable for the debts of the corporation to the extent of the amount that may be unpaid upon the stock held

by them; that no assignor of stock shall be released from any such indebtedness by reason of any assignment of stock, but shall remain liable therefor jointly with the assignee until the said stock be fully paid, and that every assignee or transferee of stock shall be liable to the company for the amount unpaid thereon, to the extent and in the same manner as if he had been the original subscriber. The statute makes the individual liability to pay for capital stock a security for the payment of debts, and the law will not tolerate any scheme by which such security is diminished or impaired to the prejudice of creditors. The obligation created is that the stock shall be paid for, and it rests upon the original subscriber and every subsequent assignee until payment is made. We are asked to construe the statute to mean, that when a subscriber has assigned his stock and it has been paid for in full he still remains liable on his original subscription, or, in other words, that the creditor can take payment for the stock as many times as there are persons who have subscribed for such stock or held it as assignee or transferee. There is nothing in the statute which would justify such an interpretation, and it is clear the legislature had no such intention. If all the stock subscribed is paid for in full, there is no prejudice to any creditor and the object of the statute is accomplished. The subscriber remains liable jointly with the assignee until the subscription is fully paid, but no portion remains unpaid when either party has paid for the stock in full. When stock has been paid for by any person the obligation of the subscriber is fulfilled, and neither the corporation nor any creditor can charge him with an amount remaining unpaid, for the simple reason that there is nothing unpaid.

It is insisted that the decision in *Alling* v. *Wenzel*, 133 Ill. 264, in some way sustains the doctrine claimed. We do not see any resemblance between that case and this. There stock was transferred to the corporation and called

treasury stock, and was sold' back to its subscribers at prices below its par value. It was held that the scheme was a mere device to evade the law, and that the parties could not defeat their liability to creditors by subscribing for stock and then surrendering it to the corporation and taking it back from such corporation, which they managed, at one-tenth or one-twentieth its value. The amount paid was treated in equity as a payment on the stock which was never paid for in full. By the same rule there would be no remaining liability in this case because the stock was fully paid.

Another case much relied upon is *Cartwright* v. *Dickinson*, 88 Tenn. 476, in which a subscriber sought to recover what he had paid upon stock which he had brought to the secretary of the association and had canceled. The secretary had no right to release shareholders from their obligations, but had substituted other subscriptions which he had received from third parties for the surrendered stock. The new subscribers did not undertake to take surrendered stock but to pay additional cash to the corporation. The scheme was a fraudulent attempt to relieve the subscriber from his subscription, and the court held that, as a matter of fact, it was not a substitution of the capital of one for that which another was bound to contribute.

In this case, Cole, Gish and Brodman subscribed for certain stock, which was surrendered to the company, and afterward other persons took that stock and paid for it and the legal title passed to them. Counsel does not deny that a corporation may, if it acts in good faith, buy and sell shares of its own stock, and the surrender of the subscriptions was in effect a purchase. (*Republic Life Ins. Co.* v. *Swigert*, 135 Ill. 150.) What was done in this case was in entire good faith, and no creditor was in any manner injured. We find no authority sustaining the novel proposition advanced, or which holds that a share of the par value of $100 is not paid for unless every person

through whose hands it has passed has paid $100, and the statute will not bear that construction.

The next proposition contended for is, that the liability of the defendants Cole and Gish to the First National Bank was *res judicata*, and the decree was erroneous in not finding that their subscriptions had not been paid because of a former adjudication. It was stipulated that the German-American National Bank of Peoria recovered a judgment May 6, 1891, against the Peoria Watch Company; that executions were issued and returned unsatisfied; that said bank filed a bill against the corporation and Cole and Gish to collect the balance of its judgment, and that a decree was entered finding said parties to be stockholders and ordering them to pay said judgment. The record brought here is not sufficient to show identity of causes of action, but, waiving that question, it shows that there was no identity of parties. The decree set forth is not in the nature of a judgment *in rem*, and to sustain the allegation of former adjudication it must be shown that the two actions are between the same parties or their privies. Cole and Gish were not barred from making their defense on account of a former suit between them and another party.

There is no fraud in this case. Every dollar of the capital was paid, and there was nothing in the nature of a representation that the corporation had a capital which it did not actually have. It can make no difference to a creditor if some part of the stock was issued as preferred stock, so long as the money went into the treasury and the dividends on such preferred stock were not paid or to be paid except out of net profits.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*