### AMBERG v. ALDRICH.

#### (Circuit Court of Appeals, Sixth Circuit. May 6, 1913.)

#### Nos. 2,318, 2,319.

1. BUILDING AND LOAN ASSOCIATIONS (§ 42*)—WITHDRAWALS—EFFECT OF INSOLVENCY.

   The right given to a paid-up shareholder in a building and loan association by statute or by its charter to withdraw on giving notice and to receive back his capital is suspended on the insolvency of the association.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

in the absence of some express provision to the contrary; and a share-holder who is permitted to withdraw after the association has become actually insolvent, although it is still a going concern and the insolvency is not known to him, may be required to refund the money received, to be ratably distributed among all shareholders.

[Ed. Note.—For other cases, see Building and Loan Associations, Cent. Dig. §§ 63, 66, 86–88; Dec. Dig. § 42.*]

2. BUILDING AND LOAN ASSOCIATIONS (§ 42*)—SUIT BY RECEIVER TO RECOVER FROM WITHDRAWING SHAREHOLDER—SUFFICIENCY OF EVIDENCE.

Defendant was the owner of nine certificates of stock in a building and loan association, with the right to withdraw on notice, subject to certain restrictions. Wishing to withdraw, he was told by the secretary that it would be some time before his shares could be paid, and advised that, if he desired to realize at once, it would be better to sell his stock, which the secretary undertook to do. Defendant therefore did not give notice of withdrawal, but indorsed his certificates, and subsequently received their par value from the secretary by checks of the association. The association was in fact insolvent at the time, but it was not generally known, nor known to defendant. After the appointment of a receiver, one certificate was found in the records duly canceled; but the others were still outstanding, and some were found in the hands of purchasers, to whom they were directly indorsed by defendant. The books showed that the purchase price had been paid in to the credit of the association, some before and some after corresponding checks had been given by the secretary to defendant. Held, in a suit by the receiver to recover back such payments from defendant, that with the exception of the canceled certificate there was not sufficient evidence to show that the certificates had in fact been redeemed by the association, which had no funds available for the purpose, and no right to redeem in the absence of the required notice, but that it must be presumed, as it appeared, that they were sold by the secretary as defendant's agent, passing the proceeds through the association's bank account, and, it appearing that the association did not lose by the transactions, that complainant was not entitled to recover.

[Ed. Note.—For other cases, see Building and Loan Associations, Cent. Dig. §§ 63, 66, 86–88; Dec. Dig. § 42.*]

Appeals from the District Court of the United States for the Eastern District of Michigan; Henry H. Swan, Judge.

Suit in equity by Ralph L. Aldrich, receiver of the Michigan Savings & Loan Association, against Lee Amberg. Decree for complainant for part of his claim, and both parties appeal. Reversed in part on defendant's appeal, and affirmed on complainant's appeal.

The Michigan Savings & Loan Association was organized under Michigan laws after the usual plan of building and loan societies. It had different classes of members or stockholders. One class subscribed for a $100 share of stock, made weekly payments thereon, and when the payments, with interest and profits earned, less operating expenses, amounted to $100, the stock was called "matured," and the subscriber was entitled to withdraw the full sum. Another class subscribed for a share of stock, and paid in the full face value, $100, in cash. The stock such subscriber received therefor was called "fixed dividend" stock, was transferable, was payable at a fixed date, and, in the meantime, drew semiannual dividends at the rate of 7 per cent. per annum; and the holder was entitled to withdraw his money at any time after 90 days' notice in writing. This right of withdrawal was modified only by the proviso that not more than 50 per cent. of the current installment receipts could be devoted to such withdrawals.

The association became in fact insolvent in 1895, and so continued thereafter; but this insolvency was concealed from the stockholders and from the

public generally. Before 1895 Amberg had paid into the association $9,000, and had received nine certificates, representing $1,000 each, of this fixed dividend stock. These certificates matured, and he exchanged them for new ones of the same kind. In 1900 he decided to withdraw his money, and took to Wemple, the secretary and practically the general manager, a written notice to that effect. He was told by Wemple that, owing to the 50 per cent. limitation, there would be considerable delay in paying off these certificates, and, if Amberg wanted his money more speedily, he better sell the certificates, instead of surrendering them for cancellation. Finally Amberg did not serve his notice to withdraw, but Wemple undertook to make such sales for Amberg, and later Amberg received from Wemple the full amount, $9,000. Amberg had no notice that the association was insolvent.

In 1901 a receiver for the association was appointed by the Circuit Court of the United States for the Eastern District of Michigan. The controversy was brought to this court, and it was held, in Aldrich, Receiver, v. Gray, 147 Fed. 453, 77 C. C. A. 597, 8 Ann. Cas. 832, that upon the insolvency of the association the members' right to withdraw capital became suspended, and that a member who had withdrawn his money after such insolvency must refund; in order that there might be a ratable distribution of all the assets among all rightful claimants.

Amberg was made defendant to a bill seeking such refund, and upon final hearing decree was entered against him for the amount of six certificates, $6,000, and interest, and the receiver was denied any recovery as to the other three certificates. Both parties appealed.

De Forest Paine and M. B. Whittlesey, of Detroit, Mich., for Aldrich.

Lucking, Emmons & Helfman, of Detroit, Mich., for Amberg.

Before WARRINGTON, KNAPPEN, and DENISON, Circuit Judges.

DENISON, Circuit Judge (after stating the facts as above). We assume, without deciding, that Amberg is in no better position than the defendants whose rights were considered in the Gray Case, and we come to the critical question, as one of fact, whether the transactions which took place relating to the different certificates were in truth and in fact surrenders of stock by Amberg to the association, and withdrawals of investment by Amberg from the association, or whether they were sales of his stock by Amberg to other individuals. The former conclusion imports liability; the latter, nonliability.

[1] 1. One certificate is in exceptional position. What purports to be the original, issued to Amberg, is found in the books of the association permanently filed among the surrendered and canceled certificates. It was, upon the argument, conceded that, if we were satisfied that this was in fact one of the original certificates issued to Amberg, the decree, so far as based on that certificate, viz., for $1,000 and interest, could not be disturbed. While some suspicion may attach to this document we think no inference is justified by the proofs, save that it is what it purports to be, and accordingly the decree must be to this extent affirmed.

[2] 2. The remaining eight certificates may be further classified, with the aid of the association books. The history of the association and the conduct of its general manager are such as to make doubtful the truthfulness of its records, and the technical admissibility of these books, as against Amberg, is challenged; but we pass by these things

and assume the accuracy of the books, so far as concerns this controversy. All the payments to Amberg were made by the association check, signed by Wemple. All eight certificates (save one) were later found in the possession of other individuals, and indorsed with due and formal assignment from Amberg to the holder. Several of these belong to one Godfrey, and his name may be used to typify the holders. The association books show when payments were made by the association to Amberg, and when payments were received by the association from Godfrey. In five instances, the payment to Amberg was earlier than that by Godfrey; in three instances, later. Apparently the District Court considered this the controlling feature in deciding whether each instance was surrender or assignment.

A discussion of the evidence would be profitless. There is, in the main facts, nothing necessarily inconsistent with the theory of either party. Though the money was received by Amberg directly from the association treasury, and though Wemple was the secretary of the association, yet he might well have acted as agent for Amberg, and the fact that, when Wemple sold a certificate, he passed the money through the association books from Godfrey to Amberg, would not be very significant: on the other hand, preserving the identity of the original certificate and avoiding the form of surrendering and reissuing might be matter of mere form, not of substance. Upon all the testimony, we conclude that the receiver has not satisfied the burden of proof resting on him to show that there was a surrender of even the five certificates.

Observing, first, that the identity of each certificate was carefully preserved, and that there was no actual surrender or cancellation or any actual issue of a new certificate to Godfrey, and that there was a written assignment of the certificate from Amberg to Godfrey, we observe, further, that Amberg had no right to demand a withdrawal, because he did not give the necessary notice, and that the association had no right to issue a new certificate of this kind to Godfrey, because the by-laws had then been amended so as to forbid 7 per cent. certificates. Even if it is true that Wemple unlawfully used the association moneys to pay Amberg, or to take in Amberg's certificate, doing so in anticipation of a sale of the same certificate, which he had negotiated or expected to make, this would not convert into a cancellation, a surrender, and an issue of a new certificate, a transaction which none of the parties intended should have that character, and which could not lawfully take that character.

We observe, also, that as the net result of the whole transaction the association treasury was not depleted. It paid $1,000 to Amberg, but it received $1,000 from Godfrey. Except upon the theory that it would have done what it did not do and could not do, viz., issue a new 7 per cent. certificate to Godfrey, the association is just as well off as though it had paid Amberg nothing and he had kept his certificate. Clark v. Clark Machine Co., 151 Mich. 416, 424, 115 N. W. 416; First Nat. Bk. v. Watch Co., 191 Ill. 128, 60 N. E. 859.

It follows that the receiver was not entitled to recover the amount of five of the certificates for which he had judgment, and, a fortiori,

that he was not entitled to anything on account of the three certificates
for which judgment went against him. Upon the amount of the one
certificate, interest should run from the date of the specific demand,
or, in default of such demand, from the date of commencing suit.

The decree below will be reversed, with costs of this court to ap-
pellant, and the record remanded for further proceedings in accord-
ance with this opinion.